UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE MOSAIC AND TERRAZZO WELFARE, PENSION, ANNUITY, AND VACATION FUNDS and TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND,<br><br>Plaintiffs,<br><br>-against-<br><br>RB RESTORATION INC.,<br><br>Defendant. | 21 CV _____<br><br>**COMPLAINT** |

Plaintiffs, by and through their attorneys, Virginia & Ambinder, LLP, as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION

1. This is a civil action pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145, and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and other applicable law, to collect delinquent employer contributions owed by Defendant to Plaintiffs, a group of multiemployer employee benefit plans, and for related relief.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over this action arising under ERISA and the LMRA pursuant to 28 U.S.C. § 1331 and pursuant to Section 301(c) of the LMRA, 29 U.S.C. § 185(c), and Section 502(e)(1) of ERISA, 29 U.S.C. § 132(e)(1).

1

3. Venue is proper in this judicial district pursuant to Section 301(a) of the LMRA, 29 U.S.C. § 185(a), and Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), as Plaintiffs are administered in this district.

## THE PARTIES

4. Plaintiffs Trustees of the Mosaic and Terrazzo Welfare, Pension, Annuity, and Vacation Funds (the "Local Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with section 302(c) of the LMRA, 29 U.S.C. § 186(c). The Trustees of the Local Funds are fiduciaries of the Local Funds within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21). The Local Funds are multiemployer employee benefit plans within the meaning of Section 3(3), (37) of ERISA, 29 U.S.C. § 1002(3), (37). The Local Funds are administered at 45-34 Court Square, Long Island City, New York 11101.

5. Plaintiff Trustees of the Bricklayers & Trowel Trades International Pension Fund (the "International Fund") is an employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Trustees of the International Fund are fiduciaries of the International Funds within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21). The International Fund is a multiemployer employee benefit plan within the meaning of Section 3(3), (37) of ERISA, 29 U.S.C. § 1002(3), (37). The International Fund maintains its principal place of business at 620 F Street, N.W., Washington, D.C. 20004.

6. Defendant RB Restoration Inc. d/b/a Midtown Terrazzo ("RB") is a corporation organized under the laws of the State of New Jersey. At relevant times, RB has been engaged in

business as an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185. RB maintains a principal place of business at 121 Patterson Street, Hillsdale, NJ 07642.

## FACTUAL ALLEGATIONS

### *Defendant RB's Obligations to Plaintiffs*

7. The Mosaic, Terrazzo and Chemical Product Decorative Finisher Masons Workers Association Local No. 7 of New York, New Jersey & Vicinity of the International Union of Bricklayers and Allied Craftworkers (the "Union") is a labor organization that represents employees in an industry affecting commerce within the meaning of Section 501 of the LMRA, 29 U.S.C. § 142.

8. At all times relevant hereto, RB was bound to a collective bargaining agreement with the Union, (the "CBA").

9. As a signatory employer to the CBA, RB was and is required to remit contributions to the Local Funds, the International Fund, and the various entities on whose behalf Plaintiffs act as collection agents pursuant to the CBA, (collectively, the "Funds"), at hourly contribution rates specified in the CBA, for each hour of work performed by Defendant RB's employees in the trade and geographical jurisdiction of the Union ("Covered Work").

10. The Funds were established pursuant to the terms of various collective bargaining agreements between the Unions and various employers. The Funds provide welfare, pension, annuity, and other benefits to covered employees, retirees, and their dependents. The Funds are operated by Trust Agreements, which are incorporated by reference in the CBA.

11. Under the CBA and the Funds' policies for collection of contributions incorporated therein ("Collection Policy"), if RB does not remit its required contributions to the Funds by the 15th day of the month that follows RB's employees' performance of Covered Work, then RB is delinquent in its contribution obligation under the CBA.

12. In the event that an employer bound by the CBA, like Defendant RB, is delinquent in its contributions to the Funds, then, pursuant to the CBA and the Funds' Collection Policy, the Funds are entitled to payment of the unpaid contributions, interest on contributions owed to the Local Funds at a rate of ten percent (10%) *per annum*, interest on contributions owed to the International Fund at fifteen percent (15%) *per annum*, liquidated damages in the amount of twenty percent (20%) of the unpaid contributions, the Funds' audit costs, and the Funds' attorneys' fees and costs incurred in obtaining these amounts from the delinquent employer.

13. In addition, the CBA provides that RB must furnish the Funds with its books and records for an audit to verify the number of hours of Covered Work performed by RB's employees and whether RB satisfied its corresponding contribution obligation under the CBA.

14. Under the Funds' Collection Policy, if an employer fails to produce its books and records necessary for a proper audit, the Funds, or their representative, may determine the employer's monthly hours subject to benefit fund contributions for each month of the requested Audit Period by using either (1) the highest number of hours the employer reported performing Covered Work for any twelve (12) months preceding the requested audit period; or, if no hours were reported during the Audit Period, (2) the highest number of hours the employer reported performing Covered Work in any month prior to the Audit Period.

15. The Funds' Collection Policy further provides that such a determination by the Funds, in the face of a non-compliant employer, shall constitute presumptive evidence of

delinquency and may be recovered along with interest thereon, liquidated damages, and attorneys' fees as set out in the Collection Policy.

16. Under the CBA, every employee that performs Covered Work for RB is entitled to the remittance of contributions by RB to the Funds, at the hourly contribution rate specified in the CBA, on behalf of the employee for each hour of Covered Work.

### *Plaintiffs' Audit of Defendant*

17. The Funds requested an audit of Defendant RB's books and records (the "Audit") covering the period from January 1, 2018 through June 30, 2021 (the "Audit Period").

18. The Funds served RB with demand for the pertinent records in accordance with the Collection Policy and the CBA.

19. RB refused to furnish the Funds with access to its books and records as required by the CBA.

20. Consequently, the Funds conducted an estimated audit in accordance with the Collection Policy for the employees for whom RB would not provide the required records.

21. Regarding the RB employees for whom RB submitted records to the Funds in accordance with the CBA, the Funds calculated any delinquent contributions for those employees by comparing those employees' hours of Covered Work reported on RB's payroll records and the number of hours reported to the Funds by RB for those employees during the corresponding time period.

22. On October 8, 2021, the Funds' auditors completed the Audit, which was partially based on books and records made available by RB, and partially based on estimated delinquencies to the extent that records were not made available by RB.

23. The Audit revealed that RB owes the Funds a total delinquency of $6,419,805.09, consisting of: (1) delinquent contributions of $4,561,075.58; (2) interest thereon of $1,043,681.26; (3) liquidated damages of $811,560,25; and (4) audit costs of $3,488.

24. The Funds auditor served Defendant with a notice of delinquency, with the Audit attached, and a demand for payment on October 8, 2021.

25. RB did not submit a rebuttal to the Audit in compliance with the notice and demand for payment, and accordingly the Audit report was made final.

26. RB has not paid the Funds for any of the delinquency identified in the Audit, despite demand for the same by the Funds.

***Defendant RB's Unreported Covered Work***

27. In addition to the delinquency identified in the Audit, Defendant RB has also failed to remit contributions to the Funds for additional Covered Work, not identified in the Audit, performed by RB's employees, but not reported by RB to the Funds.

28. Upon information and belief, RB routinely requires its employees to work hours "off the books" where the RB employee performs Covered Work for RB, but RB does not report those hours to the Funds and does not remit benefit contributions to the Funds for those hours of Covered Work (the "Unreported Work").

29. For example, during 2020 and 2021, including in February 2021, RB had its employees perform Covered Work at Tangram Towers in Flushing, New York without reporting such work to the Funds, (the "Unreported Work").

30. Pursuant to the CBA, RB owes the Funds all contributions due and owing to the Funds arising from the Unreported Work.

## THE FUNDS' FIRST CAUSE OF ACTION AGAINST DEFENDANT RB
(*Violation of ERISA*)

31. The Funds repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

32. Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

33. At all relevant times, Defendant RB was and is party to the CBA with the Union.

34. The CBA requires Defendant RB to make specified hourly contributions to the Funds in connection with all Covered Work performed by its employees.

35. Defendant RB violated Section 515 of ERISA, 29 U.S.C. § 1145, by failing to remit required contributions to the Funds for its employees' Covered Work, in contravention of the CBA and the Funds' Collection Policy, in the principal amount of at least $4,561,075.58, plus any additional delinquent contributions identified during this lawsuit.

36. Accordingly, pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132, 1145, the CBA, and the Funds' Collection Policy, Defendant RB is liable to the Funds in an amount equal to at least $4,561,075.58 in delinquent contributions, plus any additional delinquent benefits contributions identified through this litigation, interest, liquidated damages equal to twenty percent (20%) of the principal owed, and attorneys' fees and costs, including audit costs, incurred by the Funds in collecting these amounts.

**THE FUNDS' SECOND CAUSE OF ACTION AGAINST DEFENDANT RB**
(*Violation of LMRA*)

37. The Funds repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

38. The CBA required Defendant RB to make specified hourly contributions to the Funds in connection with all Covered Work performed by its employees.

39. Section 301 of the LMRA, 29 U.S.C. § 185, allows courts to enforce labor contracts, including the CBA.

40. Defendant RB violated the CBA by failing to remit required contributions to the Funds for its employees' Covered Work in the principal amount of at least $4,561,075.58.

41. Under the CBA and the Funds' Collection Policy, if RB is delinquent in its contributions to the Funds, then the Funds are entitled to payment of the unpaid contributions, interest on contributions owed to the Local Funds at a rate of ten percent (10%) *per annum*, interest on contributions owed to the International Fund at fifteen percent (15%) *per annum*, liquidated damages in the amount of twenty percent (20%) of the unpaid contributions, and the Funds' attorneys' fees and costs, including audit costs, incurred in obtaining these amounts from the delinquent employer, Defendant RB.

42. Accordingly, pursuant to the CBA, the Funds' Collection Policy, and Section 301 of the LMRA, 29 U.S.C. § 185, Defendant RB is liable to the Funds in an amount equal to at least $4,561,075.58 in delinquent contributions, plus any additional delinquent benefits contributions identified through this litigation, interest, liquidated damages equal to twenty percent (20%) of the principal owed, and attorneys' fees and costs, including audit costs, incurred by the Funds in collecting these amounts.

**WHEREFORE,** Plaintiffs respectfully request that this Court:

(1) Award judgment to Plaintiffs against Defendant for all delinquent contributions identified in this lawsuit, including, but not limited to, the delinquent contributions of $4,561,075.58 identified in the Audit, the delinquent contributions arising from the Unreported Work, plus interest, liquidated damages, and audit costs;

(2) Award Plaintiffs all reasonable attorneys' fees, expenses, and costs that they incur in prosecuting this suit; and

(3) Award Plaintiffs such other and further relief as is just and proper.

Dated: New York, New York
      November 4, 2021

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By: /s/ *John M. Harras*
John M. Harras, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
(212) 943-9080
*Attorneys for Plaintiffs*